UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| BRIELLE MCBRIDE,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MIA SOUTH CAROLINA, LLC d/b/a PET SUPPLIES PLUS and<br>SSSCR, INC.<br><br>　　　　Defendants. | CASE NO.:　2:24-CV-1959-DCN-MGB<br><br>**COMPLAINT** |

## **COMPLAINT**

Comes now, Brielle McBride, (hereinafter "Plaintiff," or "McBride") and files this complaint against MIA South Carolina, LLC (hereinafter "MIA") d/b/a Pet Supplies Plus, and SSSCR, Inc. (hereinafter "SSSCR") (collectively "Defendants") seeking to recover damages for negligent supervision and retention as well as violations of the Title VII of the Civil Rights Act of 1964, as amended, 29 U.S.C. § 2000 et seq. ("Title VII").

### **THE PARTIES**

1.　Plaintiff is an adult citizen and a current resident of Philadelphia, Pennsylvania. During all relevant times to the allegations set forth in this Complaint, Plaintiff was a resident of South Carolina and an "employee" of Defendants within the meaning of Title VII.

2.　Defendant, MIA South Carolina, LLC, is a limited liability company organized under the laws of the State of South Carolina. MIA is registered to do business in the State of South Carolina

1

and its resident agent is Lori M. Nebel ("Nebel"), located at 208 St. James Avenue, Suite B, Goose Creek, South Carolina 29445.

3. MIA was, at all relevant times, an "employer" of Plaintiff within the meaning of Title VII. Maynard v. Kenova Chem. Co., 626 F.2d 359, 360-62 (4th Cir.1980); Butler v. Drive Automotive Industries of America, Inc., 793 F.3d 404, 415–16. (4th Cir.2015); Faush v. Tuesday Morning, Inc., 808 F.3d 208, 219 (3d Cir. 2015).

4. Defendant, SSSCR, Inc., is a corporation organized under the laws of the State of South Carolina.  SSSCR regularly conducts business in South Carolina and operates a Pet Supplies Plus location in Moncks Corner, South Carolina. SSSCR is registered to do business in the State of South Carolina and its resident agent is Lori M. Nebel, located at 208 St. James Avenue, Suite B, Goose Creek, South Carolina 29445.

5. Through Defendants, Lori Nebel owns and operates two Pet Supplies Plus stores, one in Murrells Inlet and the other in Goose Creek, South Carolina.

6. Both SSSCR and MIA controlled all aspects of Plaintiff's employment including her supervision, job title, duties, schedule, hours and amount of compensation.

7. At all times relevant and for purposes of Title VII, Defendants were joint employers of Plaintiff, as they were so intertwined with one another and were jointly responsible for the "manner and means" of Plaintiff's employment, including her pay, schedule, title, location, uniform and direction. Proa v. NRT Mid Atl., Inc., 618 F. Supp. 2d 447, 458 (D. Md. 2009), aff'd, 398 F. App'x 882 (4th Cir. 2010), citing Cmty. for Creative Non–Violence v. Reid, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989).

8.     At all times relevant to this action, the Defendants collectively were acting by and through their agents, servants, employees, and/or officers to include, but not limited to, those persons and/or individuals named in the Complaint. As such, the Defendants are jointly liable for actions and omissions of said individuals acting in the course and scope of their official duties pursuant to federal law, state law, and common law.

## JURISDICTION AND VENUE

9.     Two of the causes of action in this matter are brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). Accordingly, this Court has exclusive jurisdiction pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States.

10.     In addition, this Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims for Negligent Supervision and Negligent Retention, which are brought pursuant to the law of the State of South Carolina, because those claims arise out of the same transaction or occurrence as the federal claims alleged herein.

11.     Venue is appropriate within this District because the causes of action alleged to have occurred in this Complaint occurred in the District and in this Division.

12.     Plaintiff timely filed a Charge of Discrimination against Defendant MIA on or about June 27, 2023 with the Equal Employment Opportunity Commission (EEOC) for gender discrimination/sexual harassment and retaliation under Title VII (EEOC Case No. 415-2023-1468), which included allegations substantially similar to the ones included herein based on the same set of facts. Plaintiff received a Dismissal and Notice of Right to Sue Defendant MIA from the EEOC on January 18, 2024. Thus, Plaintiff has exhausted her administrative remedies under the EEOC as to Defendant MIA.

13. Plaintiff timely filed a Charge of Discrimination against Defendant SSSCR on or about June 27, 2023 with the EEOC for gender discrimination/sexual harassment and retaliation under Title VII (EEOC Case No. 2023-415-1473), which included allegations substantially similar to the ones included herein based on the same set of facts. Plaintiff received a Dismissal and Notice of Right to Sue Defendant SSSCR from the EEOC on January 18, 2024. Thus, Plaintiff has exhausted her administrative remedies under the EEOC as to Defendant SSSCR.

**STATEMENT OF FACTS**

14. The allegations of the preceding paragraphs are hereby incorporated and alleged as if fully set forth herein.

15. In September of 2021, Plaintiff was hired by Defendants SSSCR, Inc. and MIA South Carolina, LLC, where she first worked as a team member for Defendants in Murrells Inlet, South Carolina.

16. Shortly after her employment began, Plaintiff received a promotion to handle Defendants' social media matters. Plaintiff was told by Nebel that her work performance was exceeding expectations.

17. In late 2021 and continuing in 2022, Plaintiff began receiving affection and admiration from Nebel, which came in the form of lavish gifts, cash, requests for pet sitting Nebel's dogs, as well as offers of drugs and alcohol.

18. In June of 2022, Nebel told Plaintiff she was a "sexy beast" and informed Plaintiff that she had viewed Plaintiff's Instagram profile.

19. In or around September of 2022, Plaintiff was promoted for the second time to the position of Brand Ambassador. This position change increased Plaintiff's salary but required her to

move from the Myrtle Beach area to North Charleston, South Carolina in order to be closer to the Goose Creek, South Carolina location. Plaintiff would also be living closer to Nebel.

20.     In January of 2023, Plaintiff attended Defendant's company anniversary party at a local Goose Creek establishment. Following the party, Plaintiff accepted Nebel's invitation to meet Nebel's friends in downtown Charleston, South Carolina.

21.     Following the meeting in Charleston, Plaintiff shared an Uber with Nebel and Nebel's friend. After Nebel's friend had exited the Uber and between the time the Uber dropped off Nebel's friend at his house and arrived at Nebel's house, Nebel began making sexual advances at Plaintiff in the back seat of the vehicle and requested that Plaintiff spend the night at Nebel's house, which Plaintiff declined. Nebel then placed her hand on Plaintiff' leg and whispered, "I've been wanting to fuck you for a long time."

22.     Plaintiff became very uncomfortable with the situation and again informed Nebel that she did not wish to spend the night at her house. Nebel then placed her face on the side of Plaintiff's face and bit Plaintiff in an attempt to sexually arouse Plaintiff, afterwards stating that she, "wanted to see [Plaintiff] in [Nebel's] bed with [Plaintiff's] boobs out." Plaintiff again rejected Nebel, encouraging her to "go home and take care of her dogs."

23.     Upon having her sexual advances rejected by Plaintiff, Nebel was angered and remained silent for the rest of the Uber trip.

24.     After Nebel vacated the Uber at her house, Plaintiff was emotionally distraught and upset. She sobbed and because she was not a scheduled destination on the Uber ride, requested that the Uber driver take her to a nearby gas station so that she could withdraw money to pay him for a ride home.

25. Following the events that occurred in the Uber ride, Plaintiff returned to work and was treated substantially differently by Nebel in the office. Plaintiff began being criticized for minor issues, such as not wearing the company uniform on a particular day even though employees had been encouraged to wear clothing relevant to the Super Bowl (as the company had done in the past).

26. Nebel also requested information about Plaintiff's schedule and location that had not been requested prior to the events that occurred in the Uber ride.

27. After the night of the Uber ride, Plaintiff's performance was suddenly criticized by Nebel despite being praised by Nebel prior that time. Prior to that night, Nebel even remarked to a co-worker that she wished she could clone Plaintiff.

28. Nebel also began complaining to Kymberly Long-Wallace, the Human Resources Supervisor, about Plaintiff's performance within the company. Long-Wallace, who was away on a trip to India the night of the Uber ride, thought it odd because before she went away, Nebel was effusive in praise for Plaintiff.

29. Long-Wallace suspected something had happened between Nebel and Plaintiff while she was away. A few days after her return, Long-Wallace spoke with Plaintiff and Plaintiff conveyed to Long-Wallace what happened in the Uber ride after the anniversary party.

30. On or about March 1, 2023, Plaintiff was contacted by the newly hired Market Team Lead, Angelica Quiles (hereinafter "Quiles"), while working at the Goose Creek location. Quiles informed Plaintiff that she and Nebel would be giving Plaintiff a performance evaluation, which Long-Wallace, who was also Plaintiff's direct supervisor, would not be attending.

31. During the meeting between Plaintiff, Nebel, and Quiles, Plaintiff was not given a performance review, but was instead terminated from her position and informed she would no longer be an employee of Pet Supplies Plus, SSSCR, Inc., and/or MIA South Carolina, LLC.

32. Unfortunately, this was not the first instance of Nebel's harassment and retaliation of an employee. Nebel had previously sexually harassed Kurt Infinger, a handyman and his wife. Following Infinger's rejection of Nebel's unwelcome advances towards him and his wife, Infinger's employment was terminated by SSSCR, Inc.

## FIRST CAUSE OF ACTION

### (Negligence Supervision)

33. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

34. Defendants owed a duty of care to Plaintiff to prevent her from being harassed and/or injured in the workplace.

35. Defendants knew or should have known that harassment and/or injury to the Plaintiff was foreseeable because of prior incidents with Nebel.

36. Defendants were negligent, reckless, wanton, careless, and grossly negligent with respect to the above-mentioned events in the following particulars:

    a) by failing to investigate or conduct a thorough, impartial investigation as to prior incidents related to sexual harassment by Nebel;

    b) by failing to maintain proper policies and procedures related to sexual harassment which may have prevented such an incident from occurring with Plaintiff;

c) by failing to properly train its staff and/or Nebel regarding the prevention of sexual harassment;

d) by failing to properly supervise and/or monitor the activities of Nebel with respect to her interactions with subordinate employees; and

e) by failing to take any action to supervise and/or reprimand Nebel. As a result and due to Defendants failing to properly supervise and/or monitor Nebel, Plaintiff was subjected to sexual harassment by Nebel based on the above-described acts that occurred on the night of the company anniversary party and after Nebel's advances were rejected.

f) by failing to use the degree of care and caution that a reasonable prudent entity would use under the circumstances then and there prevailing; all of which were the direct and proximate cause of the injuries, and damages suffered by the Plaintiff herein and in multiple violations of the statutes and laws of the State of South Carolina and the United States.

37. As a result of Defendants' breach of their duties to Plaintiff, Plaintiff suffered bodily harm and injury in the form of unwanted touching, including being subject to sexual groping and being bitten on the face by Nebel during the Uber ride home from said anniversary party.

38. As a result of Defendants' breach of their duties to Plaintiff, Plaintiff suffered economic damages in the form of lost back and front wages.

39. As a result of Defendants' breach of their duties to Plaintiff, Plaintiff suffered emotional distress and suffering, embarrassment and inconvenience and she is entitled to general and special damages.

## SECOND CAUSE OF ACTION

### (Negligence Retention)

40. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

41. Defendants owed a duty of care to Plaintiff to prevent her from being harassed and/or injured in the workplace.

42. Defendants knew or should have known that harassment and/or injury to the Plaintiff was foreseeable because of prior incidents with Nebel.

43. Defendants were negligent, reckless, wanton, careless, and grossly negligent with respect to the above-mentioned events in the following particulars:

a) by failing to investigate or conduct a thorough, impartial investigation as to prior incidents related to sexual harassment by Nebel;

b) by failing to maintain proper policies and procedures related to sexual harassment which may have prevented such an incident from occurring with Plaintiff;

c) by failing to properly train its staff and/or Nebel regarding the prevention of sexual harassment; and

e) by failing to take any action to terminate Nebel's employment. As a result and due to Defendants failing to properly terminate Nebel's employment after a prior incident of sexual harassment, Plaintiff was subjected to sexual harassment by Nebel based on the above-described acts that occurred on the night of the company anniversary party and after Nebel's advances were rejected.

      f) by failing to use the degree of care and caution that a reasonable prudent entity would use under the circumstances then and there prevailing; all of which were the direct and proximate cause of the injuries, and damages suffered by the Plaintiff herein and in multiple violations of the statutes and laws of the State of South Carolina and the United States.

44. As a result of Defendants' breach of their duties to Plaintiff, Plaintiff suffered bodily harm and injury in the form of unwanted touching, including being subject to sexual groping and being bitten on the face by Nebel during the Uber ride home from said anniversary party.

45. As a result of Defendants' breach of their duties to Plaintiff, Plaintiff suffered economic damages in the form of lost back and front wages.

46. As a result of Defendants' breach of their duties to Plaintiff, Plaintiff suffered emotional distress and suffering, embarrassment and inconvenience and she is entitled to general and special damages.

## THIRD CAUSE OF ACTION

**(Discrimination and Harassment Based on Gender in Violation of Title VII, 42 U.S.C. § 2000e, et seq.)**

47. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

48. Based on the above-described acts, practices and omissions, Defendants engaged in unlawful discrimination under Title VII based on Plaintiff's sex (female).

49. Furthermore, Defendants' illegal actions against Plaintiff were aimed at Plaintiff because of her sex, resulting in adverse impacts to the terms and conditions of Plaintiff's employment and further subjecting Plaintiff to harassment and a hostile work environment.

50. Defendants' conduct was sufficiently severe or pervasive that a reasonable person in Plaintiff's position would find Plaintiff's work environment to be hostile or abusive.

51. At the time the above-described conduct occurred, and as a result of such conduct, Plaintiff believed her work environment to be hostile or abusive.

52. Defendants knew or should have known of the conduct of its employees toward Plaintiff and failed to take prompt, remedial action to stop the conduct.

53. As such, Defendants violated 42 U.S.C. §2000(e)-2(a) and discriminated against Plaintiff by not only subjecting her to sufficiently severe or pervasive harassment based on female gender stereotypes so as to alter the conditions and terms of Plaintiff's employment, but also: failing to act and condoning or tolerating such harassment, subjecting Plaintiff to less favorable terms and conditions of employment by imposing heightened and/or disproportionate discipline on Plaintiff, and ultimately terminating Plaintiff's employment.

54. The reasons that Defendants submit for terminating Plaintiff's employment are false and pretext for unlawful discrimination.

55. In unlawfully discriminating against Plaintiff, Defendants acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, thereby necessitating the imposition of exemplary damages.

56. As a result of Defendants' above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay. Plaintiff is also entitled to and seeks her attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

## FOURTH CAUSE OF ACTION

### (Violation of Title VII –Retaliation Based on Sex)

57. Plaintiff incorporates by reference the above paragraphs as though fully set forth separately herein.

58. By the above-described acts, Plaintiff engaged in activity protected by Title VII by rejecting Nebel's sexual advancements.

59. By the above-described acts, practices and omissions, Defendants engaged in unlawful retaliation against Plaintiff in violation of Title VII, 42 U.S.C. 2000e-3(a) when they terminated Plaintiff's employment in response to her rejection of Nebel's sexual advancements.

60. By the above-described acts, practices and omissions, Defendants violated Plaintiff's rights under Title VII, 42 U.S.C. 2000e-3(a) as they knew or should have known about the alleged harassment and complaints made by Plaintiff, and failed to prevent the discrimination and subsequent retaliation as set forth above.

61. The reasons that Defendants submit for terminating Plaintiff's employment are false and pretext for unlawful discrimination.

62. In unlawfully retaliating against Plaintiff, Defendants acted willfully, wantonly and/or with malice or with conscious and/or reckless indifference to Plaintiff's equal rights under the law, thereby necessitating the imposition of exemplary damages.

63. As a result of Defendants' above-described conduct, Plaintiff has suffered loss of income, emotional pain and suffering, embarrassment and inconvenience and she is entitled to general and special damages, and economic damages including front and back pay.  Plaintiff is also entitled to and seeks her attorneys' fees and costs pursuant to 42 U.S.C. §2000e-5(k).

**WHEREFORE**, Plaintiff Brielle McBride prays for judgement against Defendants SSSCR, Inc., and MIA South Carolina, LLC d/b/a Pet Supplies Plus, collectively, in a just and equitable sum of actual, compensatory and punitive damages, for the costs of this action including attorney's fees, and for such other and further relief as this Court may deem just and proper.

                                              BRETT M. EHMAN
                                              Attorney at Law

April 16, 2024                         /s/ Brett M. Ehman
                                              Brett M. Ehman
                                              Fed. Id. No. 12844
                                              S.C. Bar No.: 102443
                                              Attorney for Plaintiff
                                              2971 West Montague Avenue
                                              Suite 203
                                              North Charleston, SC  29418
                                              (843) 225-3607
                                              brett@ehmanlaw.com